27 So.2d 36

### MITCHELL v. STATE.
#### I Div. 258.

Supreme Court of Alabama.

June 27, 1946.

Wm. N. McQueen, Atty. Gen., and Clarence M. Small, and John O. Harris, Asst. Attys. Gen., for the State.

Wm. G. Caffey, of Mobile, opposed.

STAKELY, Justice.

We agree with the Court of Appeals that the indictment is fatally defective for failure to allege corrupt motive or criminal intent. There is nothing in the indictment to show that the defendants knew that any one of the voters in question did not live in Ward 3 or that they had not lived there long enough to entitle them to vote in that ward. On this point we think it well to say a few things in supplement of the opinion of the Court of Appeals.

In considering the sufficiency of the indictment, it should be noted at the outset that there is no code form for conspiracy which is applicable to this case. The only code form for conspiracy relates to conspiracy to commit a felony or misdemeanor. § 259, Form 41, Title 15, Code of 1940. No statute makes the causing of a registered voter to be transferred from the ward in which he lives to a ward in which he does not live, either a felony or a misdemeanor. As pointed out by the Court of Appeals no penalty or punishment is provided for the violation of the pertinent part of § 44, Title 17, Code of 1940.

It is conceded by the state that the indictment in the case at bar is drawn pursuant to § 103, Title 14, Code of 1940. There is a line of cases in this state which declares the general rule that an indictment which substantially follows the language of the statute is sufficient. But it is equally well settled that this rule does not apply when the statute does not prescribe with definiteness the constituents of the offense. Webster v. State, 147 Ala. 121, 41 So. 969; Collins v. State, 28 Ala.App. 400, 185 So. 779; Doss v. State, 23 Ala.App. 168, 123 So. 237; Id., 220 Ala. 30, 123 So. 231, 68 A.L.R. 712; State v. Dodd, 17 Ala.App. 20, 81 So. 356; Miles v. State, 94 Ala. 106, 11 So. 403.

We think it clear that § 103, Title 14, Code 1940, does not attempt to define the constituent elements of a criminal conspiracy. And so it cannot be said that the indictment here is sufficient because it follows the language of the statute. This being true, we must look to the common law for definition of criminal conspiracy. Having reached this point, it is inescapable that corrupt motive or criminal intent must be alleged, since corrupt motive or criminal intent is a constituent element of criminal conspiracy.

"A corrupt motive or intent is essential to a criminal conspiracy." 15 C.J.S., Conspiracy, § 45, pp. 1071, 1072.

172

In the case of Commonwealth v. Benesch, 290 Mass. 125, 194 N.E. 905, 910, decided by the Supreme Court of Massachusetts, it is pertinently said: "In the case of conspiracy, as with other common law crimes, it is necessary that criminal intent be shown. Speaking in general terms, there must be an intent to do wrong. Selling shares on instalments was not in itself wrong. * * * So long as the contracts had not been approved, sale of the shares was malum prohibitum because of the statute, and nothing more. While no decision in this commonwealth directly in point has been called to our attention, it has been held by excellent authority in other jurisdictions that in order to sustain an indictment for conspiracy to commit an offence which, like that here involved is malum prohibitum only, belonging to a general type of offences which has been greatly extended by modern legislation in many fields, it must appear that the defendant knew of the illegal element involved in that which the combination was intended to accomplish. * * * To constitute the criminal intent necessary to establish a conspiracy there must be both knowledge of the existence of the law and knowledge of its actual or intended violation."

In the case of Smith v. State, 223 Ala. 346, 136 So. 270, 271, this court said: "Generally speaking, when an act is prohibited and made punishable by statute only, the statute is to be construed in the light of the common law and the existence of a criminal intent is to be regarded as essential, even when in terms not required. * * *" See also Britton v. United States, 7 Cir., 60 F.2d 772; Id., 287 U.S. 669, 53 S.Ct. 314, 77 L.Ed. 577; Haffa v. United States, 7 Cir., 36 F.2d 1, certiorari denied 281 U.S. 727, 50 S.Ct. 240, 74 L.Ed. 1144.

 By this process we have now reached what we regard as the decisive question in the case. Can we say that the language of the indictment fairly charges corrupt motive or criminal intent? We do not think so. To begin with, the word "conspire" does not within itself necessarily connote an evil intention. Webster's New International Dictionary; 15 C.J.S., Conspire, p. 1166. Ordinarily in an indictment,

as pointed out by the Court of Appeals, an allegation that the defendants had conspired to commit an act inherently unlawful would import a guilty knowledge because in such a case the act in question involves in its very nature a guilty knowledge and accordingly to charge the act is to charge corruptive or criminal intent. But in the case at bar, there is no act inherently unlawful, in causing a registered voter to be transferred from the ward in which he lives to a ward in which he does not live. So we must look beyond the mere use of the word "conspire" in an indictment. Schaffter v. Irwin, 139 La. 92, 71 So. 241.

 Except when a statutory form prescribes otherwise, it is essential to good pleading in an indictment that sufficient facts be alleged to show in and of themselves a criminal offense. Smith v. State, 63 Ala. 55; Dreyfus v. State, 83 Ala. 54, 3 So. 430; Ex parte Allen, 241 Ala. 137, 2 So.2d 321. "Laxness in pleading is never permissible in charging the commission of a crime." Reims v. State, 17 Ala.App. 128, 82 So. 576, 578. And the statement of bald conclusions will not suffice. Holt v. State, 16 Ala.App. 399, 78 So. 315; Mastoras v. State, 28 Ala.App. 123, 180 So. 113. Accordingly an allegation that defendants "unlawfully conspired" is insufficient to charge an offense, unless the facts alleged are in themselves sufficient to show an unlawful conspiracy.

"The word 'unlawfully' modifies the charge of conspiracy, and does not characterize the supposed offense that was the object of the conspiracy. That word, as used in the indictment, signifies 'contrary to law'—to any law, criminal or civil. 2 Bishop's Criminal Law, § 178(2). The allegation that an act which is intrinsically lawful was done unlawfully is insufficient, unless there is an allegation specifically pointing out in what manner the act was done unlawfully. 31 C.J. 702. If the act complained of is in its very nature unlawful, it need not be alleged that it was done unlawfully. Rumely v. United States, 2 Cir., 293 F. 532; Burns v. United States, 5 Cir., 296 F. 468. But where an act may be either lawful or unlawful, as is the case here, the indictment must allege that it was done unlawfully.

"In such a case the fact that the conspiracy is characterized as unlawful is not enough. * * *" Middlebrooks et al. v. United States, 5 Cir., 23 F.2d 244, 245.

See also Conrad v. United States, 5 Cir., 127 F. 798; Hilt v. United States, 5 Cir., 279 F. 421; Green v. Bennett, Tex.Civ. App., 110 S.W. 108.

In the case of State v. State, 47 N.J.L. 461, 1 A. 509, it was alleged that the defendants "unlawfully conspired to put into the hands of one Morgan a sum of money." The court said: "There is in this indictment a failure to charge a corrupt purpose in entering into the agreement without which it was not a conspiracy."

In State ex rel. Tatham v. Coleman, 122 Fla. 819, 166 So. 221, 222, 224, the indictment alleged that defendants "did unlawfully conspire * * * together to cheat and defraud the City of Miami * * * of its money, goods and chattels, to-wit: certain tax sale certificates of the aggregate value of Ninety-seven thousand Dollars ($97,000.00), by unlawfully pretending to sell, convey and transfer to" the city certain lands in exchange for the $97,000 of certificates, the land to be so conveyed at a grossly excessive, exorbitant and fictitious value to the detriment, injury and loss of said city. The Supreme Court of Florida held the indictment insufficient because it did not allege that the agreement was willfully fraudulent or corrupt, the court saying: "There is no allegation in the indictment that the action alleged to have been taken by, and the things alleged to have been done by (the alleged conspirators) were corrupt, or that such action of either of said commissioners was *willfully* fraudulent or corrupt, nor that they, or either of them, were influenced by any fraudulent, corrupt or wicked motive."

In the case of Pereles v. Weil, D.C., 157 F. 419, 422, an indictment was sought to charge defendant with a conspiracy to defraud the United States by obtaining coal lands in excess of the quantity which it could lawfully acquire under the coal land purchase laws by means of entries to be made by certain of the defendants as individuals. Of such an indictment the court said: "It is not charged that the obtaining of the land was fraudulently, knowingly, or intentionally done, nor that the entries were simulated, fictitious, or mala fide. There is no averment of deceit practiced, nor facts suppressed, nor land officers misled, nor of the contemplated commission of intentional fraud."

The allegations of fact in the indictment are entirely consistent with a purpose to apply to the board of registrars to transfer the named voters to Ward 3 without knowledge that they were not residents of Ward 3 and under the bona fide and justifiable belief that they were such residents. In Stein v. State, 37 Ala. 123, this court said: "The indictment does not charge that the defendant knowingly or intentionally supplied water of unwholesome or poisonous quality. * * * Defendant may * * * have done all that is alleged and yet have been guilty of *no known or intentional* wrong. Can it be that upon such facts the defendant is criminally guilty?" The court held that it could not be.

And in Henry v. State, 33 Ala. 389, this court said: "All the facts charged in the third count may be true and yet the defendant be wholly innocent. It would be monstrous to hold the indictment good when the supposition of the defendant's innocence is consistent with every fact stated in it." See also United States v. Cruikshank, 92 U.S. 542, 23 L.Ed. 588.

Counts 6 and 9 charge that the defendants unlawfully conspired together to furnish to the board of registrars false evidence that certain named registered voters were at the time residents of Ward 3, so as to cause the board to transfer their names to the registration list of Ward 3, though they were not residents thereof. It is not alleged that either defendant knew that the proposed evidence was false. The allegation is entirely consistent with innocence on the part of the defendants, because it is consistent with honest belief based on the statements of witnesses that the voters did not live in Ward 3.

"Regardless of fact, the court must, in obedience to a well-settled rule, make every presumption in favor of the prisoner which the indictment will authorize and this, too,

even after verdict." State v. Seay, 3 Stew. 123, 130, 20 Am.Dec. 66.

"Such facts must be alleged that, if proved, the defendant cannot be innocent." Doss v. State, 23 Ala.App. 168, 123 So. 237, 243.

Counts 6 and 9 omit to aver that the defendants conspired to procure false testimony corruptly, as denounced by § 377, Tit. 14, Code of 1940.

 While we agree that the demurrer to the various counts of the indictment should have been sustained, we do not agree that this should result in reversal and rendition of judgment and discharge of the defendants. We are not concerned here with a prosecution begun by affidavit, but by indictment. Hence authorities dealing with prosecutions begun by affidavit are not applicable. "In cases of indictment held invalid by this court, and due to be quashed, the practice is not to quash the indictment here, but remand the cause to the trial court with directions to quash, so that proper orders may be there made to hold the accused for a new indictment." Slater v. State, 230 Ala. 320, 162 So. 130, 132.

In the foregoing authority this court recognized that it is not the function of the appellate court to order another indictment to be found and in such case make an "entry of record * * *, setting forth the facts." § 258, Title 15, Code of 1940. The proper practice is accordingly to remand the cause so that the trial court can so act if it deems proper. Dunkin v. State, 134 Ala. 195, 32 So. 666. And it is no answer, where an indictment is involved, to say that the statute of limitation has run, because by express provision of § 226, Title 15, Code of 1940, where an indictment is quashed "because it charged no offense, or for any other cause, * * * the time elapsing between the preferring of the first charge or indictment and the subsequent indictment must be deducted from the time limited for the prosecution of the offense last charged."

Accordingly it results that the judgment of the Court of Appeals is affirmed in holding that the indictment is subject to demurrer and the judgment of the Court of Appeals is reversed in discharging the defendants and the cause is remanded to the Court of Appeals so that it can make an order remanding the cause to the circuit court in accordance herewith.

Affirmed in part and in part reversed and remanded.

All the Justices concur.